# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

STATE AUTO PROPERTY AND
CASUALTY INSURANCE COMPANY,

          Plaintiff,

v.                                           CIVIL ACTION NO.   2:14-cv-19679

H.E. NEUMANN COMPANY, et al.,

          Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Declaratory Judgment (the "Motion").

(ECF No. 11.)   For the reasons discussed herein, the Court **DENIES** the Motion.[1]

### I.   Background

This case concerns whether Plaintiff is obligated to indemnify and defend Defendant H.E.

Neumann Company ("Defendant") for costs associated with a third-party action filed by

Defendants Kevin Francis ("Francis") and Susan Francis against Defendant—and numerous other

defendants—on March 19, 2010, in the Circuit Court of Kanawha County, West Virginia (the

"Underlying Litigation").   (ECF No. 1 ¶ 2.   *See generally* ECF No. 1-34 (providing the complaint

in the Underlying Litigation).)   Plaintiff is "a corporation with its principal place of business

---

[1] In its order entered on September 21, 2015, the Court directed the parties to file additional briefing and stayed this
case "to provide an opportunity for the parties" to file this briefing.   (ECF No. 28 at 2.)   As noted herein, the parties
subsequently filed this additional briefing.   The Court therefore **LIFTS** the stay in this case.

located in Des Moines, Iowa." (ECF No. 1 ¶ 6.) Defendant is "a corporation organized under the laws of the State of West Virginia." (*Id.* ¶ 7.)

## A.     The Relevant Insurance Policies

"[Plaintiff] issued liability policies to [Defendant] with effective dates of coverage from January 1, 2006 to January 1, 2014."[2] (ECF No. 12 at 3.) Three parts of these policies are pertinent for the instant action: the Commercial General Liability Coverage Forms (the "CGLs"), the Employer's Liability Coverage Forms (the "Employer's Liability Policies"), and the Commercial Umbrella Coverage Forms (the "Umbrella Policies") (together, the "Policies"). (*See, e.g.*, ECF No. 1 ¶¶ 22–25.) While Defendant's annual policies with Plaintiff varied—to some extent—in successive years, the relevant language for purposes of addressing Plaintiff's Motion remained materially identical during this time period. (*See, e.g.*, ECF No. 12 at 11–15.)

### 1.     The CGLs

Each of the Policies include a CGL, which provide the following, in pertinent part:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY . . . LIABILITY

1. Insuring Agreement

   a. [Plaintiff] will pay those sums that [Defendant] becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. [Plaintiff] will have the right and duty to defend [Defendant] against any "suit" seeking those damages. However, [Plaintiff] will have no duty to defend [Defendant] against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply.

---

[2] The complaint in the Underlying Litigation was filed in March 2010. (*See* ECF No. 1-34.) Additionally, the record does not indicate that Francis alleged any harm caused by Defendant following 2010. Indeed, the focus of the parties throughout their briefing is on the policies and facts prior to the filing of the complaint in the Underlying Litigation. (*See, e.g.*, ECF No. 12; ECF No. 15.) As such, while Plaintiff insured Defendant after 2010, only the policies between 2006 and 2010 are relevant in this case.

. . .

    b.  This insurance applies to "bodily injury" . . . only if:

        (1) The "bodily injury" . . . is caused by an "occurrence" that takes place in the "coverage territory"; [and]

        (2) The "bodily injury" . . . occurs during the policy period . . . .

(ECF No. 1-2 at 1; ECF No. 1-6 at 1; ECF No. 1-10 at 34; ECF No. 1-15 at 1; ECF No. 1-19 at 1.)

The CGLs include the following exclusion relating to liability arising out of Defendant's position as an employer (the "CGL Employee Exclusion Provision"):

    2.  Exclusions

    This insurance does not apply to:

. . .

    e.  Employer's Liability

    "Bodily injury" to:

    (1) An "employee" of [Defendant] arising out of and in the course of:

        (a) Employment by [Defendant]; or

        (b) Performing duties related to the conduct of [Defendant's] business; or

    (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

    This exclusion applies:

    (1) Whether the insured may be liable as an employer or in any other capacity . . . .

(ECF No. 1-2 at 2; ECF No. 1-6 at 2; ECF No. 1-10 at 35; ECF No. 1-15 at 2; ECF No. 1-19 at 2.)

The CGLs also provide these pertinent definitions:

SECTION V – DEFINITIONS

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means . . . [t]he United States of America . . . .

5. "Employee" includes a "leased worker".  "Employee" does not include a "temporary worker".

. . .

10. "Leased worker" means a person leased to [Defendant] by a labor leasing firm under an agreement between [Defendant] and the labor leasing firm, to perform duties related to the conduct of [Defendant's] business.  "Leased worker" does not include a "temporary worker".

. . .

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

18. "Suit" means a civil proceeding in which damages because of "bodily injury" . . . to which this insurance applies are alleged. . . .

19. "Temporary worker" means a person who is furnished to [Defendant] to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

(ECF No. 1-2 at 12–15; ECF No. 1-6 at 12–15; ECF No. 1-10 at 45–48; ECF No. 1-15 at 12–15; ECF No. 1-19 at 12–15.)

2.    The Umbrella Policies

Defendant augmented its insurance with Plaintiff by procuring the Umbrella Policies.

(*See, e.g.*, ECF No. 1 ¶ 25.)   The Umbrella Policies provide for the following coverage, in relevant part:

Coverage A    Bodily Injury . . . Liability

4

1.  Insuring Agreement

    a.  [Plaintiff] will pay on behalf of [Defendant] the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" . . . to which this insurance applies.  [Plaintiff] will have the right to associate with the "underlying insurer" and [Defendant] to defend against any "suit" seeking those damages.  But:

    . . .

    (3) [Plaintiff has] a right and duty to defend [Defendant] against any "suits" to which this insurance applies . . . . However, [Plaintiff] will have no duty to defend [Defendant] against any "suits" seeking damages for "bodily injury" . . . to which this insurance does not apply . . . .

    . . .

    b.  It is agreed that this insurance only applies if:

    (1) The "bodily injury" . . . occurs during the policy period of this policy;

    (2) With respect to [Defendant's] liability (other than under a contract) for "bodily injury" to [Defendant's] "employees" arising out of and in the course of their employment by [Defendant]:

        (a) Any "bodily injury" by disease is caused or aggravated by the conditions of that employment; and

        (b) An "employee's" last day of last exposure to conditions causing or aggravating such disease occurs during the policy period of this policy; and

    (3) The "bodily injury" . . . is caused by an "occurrence", and such "occurrence" takes place in the "coverage territory".

(ECF No. 1-2 at 48; ECF No. 1-6 at 33; ECF No. 1-11 at 20; ECF No. 1-17 at 18; ECF No. 1-21 at 1.)[3]   The Umbrella Policies include definitions of the terms "bodily injury," "coverage

---

[3] The Umbrella Policies include an employee exclusion provision that utilizes identical language as the CGL Employee Exclusion Provision.  (*See* ECF No. 1-2 at 49; ECF No. 1-6 at 34; ECF No. 1-11 at 21; ECF No. 1-17 at 19; ECF No. 1-21 at 2.)   However, unlike the latter provision, the employee exclusion provision in the Umbrella Policies is limited insofar as it "applies only with respect to" particular categories of individuals.  (*See* ECF No. 1-2

5

territory," "employee," "leased worker," "suit," and "temporary worker" that are identical to the

definitions for these terms provided in the CGLs.   (*See* ECF No. 1-2 at 64–65, 67–68; ECF No.

1-6 at 52–53; ECF No. 1-7 at 1; ECF No. 1-11 at 39–40, 42–43; ECF No. 1-17 at 37–38, 40–41;

ECF No. 1-21 at 20–21, 23–24.)   The Umbrella Policies also include the following unique

definition of the term "occurrence":

> 15. "Occurrence" means:
>
>> a.  With respect to "bodily injury" . . . , an accident, including continuous or
>>     repeated exposure to substantially the same general harmful conditions.
>>     This does not apply to [Defendant's] liability (other than under a contract
>>     or agreement) for "bodily injury" to [Defendant's] "employees" arising out
>>     of and in the course of employment by [Defendant]; or
>>
>> b.  With respect to [Defendant's] liability (other than under a contract or
>>     agreement) for "bodily injury" to [Defendant's] "employees" arising out of
>>     and in the course of employment by [Defendant], "bodily injury" caused by
>>     accident or disease.

(ECF No. 1-2 at 66; ECF No. 1-6 at 54; ECF No. 1-11 at 41; ECF No. 1-17 at 39; ECF No. 1-21

at 22.)

### 3.   The Employer's Liability Policies

Defendant also supplemented its policies with Plaintiff by procuring the Employer's

Liability Policies, which modify the CGLs.   (*See* ECF No. 1-2 at 31 (noting that the Employer's

Liability Policies "modif[y] insurance provided under . . . [the CGL]"); ECF No. 1-6 at 17 (same);

ECF No. 1-11 at 10 (same); ECF No. 1-15 at 26 (same); ECF No. 1-20 at 1 (same).)   While the

---

at 49–50; ECF No. 1-6 at 35; ECF No. 1-11 at 22; ECF No. 1-17 at 20; ECF No. 1-21 at 3.)   Plaintiff does not argue
that the employee exclusion provision in the Umbrella Policies is applicable in this case.   (*See, e.g.*, ECF No. 12 at 9
(providing Plaintiff's argument that the Policies "make clear that this insurance applies to bodily injury . . . only when
it occurs during the policy period").)   Additionally, the record does not otherwise indicate whether Francis is in the
category of individuals that would implicate the employee exclusion provision in the Umbrella Policies.   The Court
shall therefore forego an analysis of the separate employee exclusion provision in the Umbrella Policies.

precise language of the Employer's Liability Policies changed between 2006 and 2010, the provisions that are pertinent here remained consistent.  In particular, the Employer's Liability Policies state that "[P]laintiff will pay those sums that [Defendant] becomes legally obligated to pay as damages because of . . . 'bodily injury by disease' to [Defendant's] 'employee' to which this insurance applies."  (ECF No. 1-6 at 17; ECF No. 1-11 at 10; ECF No. 1-15 at 26; ECF No. 1-20 at 1; *cf.* ECF No. 1-2 at 31 (constituting the 2006 Employer's Liability Policy, which differs slightly insofar as it provides that "[Plaintiff] will pay those sums that the insured becomes legally obligated *by West Virginia Law* to pay as damages because of . . . 'bodily injury by disease' to [Defendant's] 'employee' to which this insurance applies" (emphasis added)).)  The Employer's Liability Policies then provide, in pertinent part, that "[t]his insurance applies to . . . 'bodily injury by disease' only if": (1) the "'bodily injury by disease' arises out of and in the course of the injured 'employee's' employment by [Defendant];" (2) the "'bodily injury by disease' takes place in the 'coverage territory;'" and (3) the "'[b]odily injury by disease' is caused by or aggravated by conditions of [Defendant's] employment" and the "'employee's' last day of last exposure to the conditions causing or aggravating such 'bodily injury by disease' must occur during the policy period."  (ECF No. 1-6 at 17; ECF No. 1-11 at 10; ECF No. 1-15 at 26; ECF No. 1-20 at 1; *cf.* ECF No. 1-2 at 31–32 (constituting the 2006 Employer's Liability Policy, which provides the following materially identical language as to the third listed condition for coverage: "'Bodily injury by disease' is caused by or aggravated by conditions of employment by [Defendant] and the injured 'employee's' last day of last exposure to the conditions causing or aggravating such 'bodily injury by disease' occurs during the policy period").)  The Employer's Liability Policies provide that the term "'[b]odily injury by disease' means a disease sustained by a person, including death"

7

and "does not include a disease that results directly from an accident."   (ECF No. 1-2 at 34; ECF No. 1-6 at 19; ECF No. 1-11 at 12; ECF No. 1-15 at 28; ECF No. 1-20 at 3.)   The remaining pertinent definitions provided in the CGLs are not altered in the Employer's Liability Policies.[4] (*See* ECF No. 1-2 at 34; ECF No. 1-6 at 19; ECF No. 1-11 at 12; ECF No. 1-15 at 28; ECF No. 1-20 at 3.)

**B.     The Underlying Litigation**

On March 19, 2010, Francis and his wife filed the complaint in the Underlying Litigation against Defendant and sixty-seven other defendants in the Circuit Court of Kanawha County, West Virginia.   (*See* ECF No. 1-34.)   In this complaint, the plaintiffs allege that "Francis worked as a welder out of Marietta Pipefitters Local 168 and was exposed to various chemicals and heavy metals throughout the course of his employment at various industrial facilities throughout the [S]tate of West Virginia and elsewhere."   (*Id.* ¶ 1.)   The plaintiffs further allege that, as a result of this exposure, "Francis suffers from the lung diseases pulmonary fibrosis [and] emphysema and has experienced pulmonary failure."   (*Id.*)   The plaintiffs also allege that Defendant and forty-four other defendants—which, together with Defendant, the plaintiffs describe as "sellers"—"engaged in . . . . the mining, milling, manufacturing, distributing, supplying, selling and/or using and/or recommending the use of" certain "dangerous ingredients and products."   (*Id.* ¶ 7.)   The complaint in the Underlying Litigation includes claims for negligence, strict liability, breaches of express and implied warranties, punitive damages, and loss of consortium against all of the "sellers," including Defendant.   (*See id.* ¶¶ 8–19, 23–30.)   The complaint does not include

---

[4] The Employer's Liability Policies include a separate definition of the term "coverage territory."   (*See* ECF No. 1-2 at 34; ECF No. 1-6 at 19; ECF No. 1-11 at 12; ECF No. 1-15 at 28; ECF No. 1-20 at 3.)   However, for purposes of the present Motion, this separate definition is materially identical to the definition for this term provided in the CGLs.

any allegations or claims against Defendant pertaining to Defendant's position as an employer of Francis.   (*See* ECF No. 1-34.)   The complaint also does not include any allegations regarding the specific dates when Francis was purportedly exposed to harmful materials connected to Defendant. (*See id.*)

During the course of the Underlying Litigation, Francis produced a document entitled "Kevin Francis Work History."   (*See* ECF No. 1-35.)   This document lists Francis' jobsites, employers, dates of employment, co-workers, and "[o]ther [c]ontractors [p]resent" between January 1977 and September 2002.   (*See id.*)   In this document, Francis describes Defendant as his "[e]mployer" during three short periods of time: (1) February 28, 1978 to April 4, 1978; (2) February 21, 1979 to March 7, 1979; and (3) April 15, 1981 to June 25, 1981.   (*See id.* at 1–3.) Francis' work history also lists Defendant as one of the "[o]ther [c]ontractors [p]resent" during two additional periods of time: (1) April 17, 1978 to May 3, 1978; and (2) June 12, 1978 to February 20, 1979.   (*See id.* at 1–2.)

## C.   Procedural Posture

Plaintiff filed its Complaint for Declaratory Judgment in this Court on June 27, 2014. (ECF No. 1.)   In the Complaint, Plaintiff requests that the Court declare that: (1) "the language of [Plaintiff's] policies is clear and unambiguous;" (2) "the policies do not provide coverage for [Defendant] and [its] alleged actions or inactions which occurred from 1978 to 1981;" (3) "the policies do not provide coverage for any of the claims alleged by Kevin and Susan Francis" in the Underlying Litigation; and (4) Plaintiff "has no duty to defend or indemnify [Defendant] in the" Underlying Litigation.   (*Id.* at 18–19.)   Plaintiff also requests that the Court "award[]" it "the costs of its prosecution of this declaratory judgment action," including attorneys' fees.   (*Id.* at 18.)

On November 19, 2014, Plaintiff filed the Motion, in which it again requests this same relief.  (ECF No. 11.)  Defendant filed its opposition to the Motion on December 12, 2014, (ECF No. 15), and Plaintiff filed its reply in support of the Motion on December 23, 2014, (ECF No. 19).

On September 21, 2015, the Court entered an order directing the parties to file additional briefing regarding the Motion.  (ECF No. 28; *see also id.* at 2 (providing the Court's order staying this action "to provide an opportunity for the parties to brief" the issues identified by the Court in the order).)  Plaintiff filed its additional briefing in support of the Motion on October 21, 2015, (ECF No. 29), Defendant filed its supplemental briefing in opposition to the Motion on November 4, 2015, (ECF No. 30), and Plaintiff filed its additional reply brief in support of the Motion on November 11, 2015, (ECF No. 31).  As such, the Motion is fully briefed and ready for disposition.

## II.  Legal Standard

### A.    The Federal Declaratory Judgment Act

In its Complaint for Declaratory Judgment, Plaintiff seeks declaratory judgment pursuant to "[t]he Declaratory Judgment[] Act and the West Virginia Uniform Declaratory Judgment Act." (ECF No. 1 ¶ 3.)  The Complaint for Declaratory Judgment also invokes this Court's diversity subject-matter jurisdiction under 28 U.S.C. § 1332.  (*See id.* ("This Court has jurisdiction [over] this case pursuant to 28 U.S.C. § 1332 as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.").)

"Federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law."  *McClung v. Westport Ins. Corp.*, Civil Action No. 2:12–cv–01648, 2012 WL 2906760, at *2 (S.D. W. Va. July 16, 2012) (citing *Hanna v. Plumer*, 380 U.S. 460, 471 (1965)).

"The federal Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts; it is purely procedural." *Id.* (citing *Vaden v. Discover Bank*, 556 U.S. 49, 70 n.19 (2009)); *see, e.g.*, *Webb Law Firm, P.L.L.C. v. Webb Law Firm, P.C.*, Civil Action No. 2:13–cv–21470, 2014 WL 4795159, at *4 (S.D. W. Va. Sept. 25, 2014) ("The Declaratory Judgment Act does not confer jurisdiction upon federal courts." (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950))); *cf. id.* ("[T]he power to issue declaratory judgments must lie in some independent basis of jurisdiction."); *Md. Cas. Co. v. Shamblen*, Civil Action No. 2:13–cv–05395, 2014 WL 1276486, at *7 (S.D. W. Va. Mar. 27, 2014) ("In order to maintain a declaratory judgment action under the Declaratory Judgment Act, a federal court must . . . have an independent basis for jurisdiction." (citing 28 U.S.C. § 2201(a))).   As such, in the present case, the Court sits in diversity jurisdiction, but "must apply the federal, rather than state, Declaratory Judgment Act."   *McClung*, 2012 WL 2906760, at *2 (citations omitted).

"The federal Declaratory Judgment Act, 28 U.S.C. § 2201, grants district courts the . . . power to entertain declaratory judgment actions."   *Jones v. Sears Roebuck & Co.*, Civil Action No. 5:06-cv-00345, 2007 WL 964401, at *2 (S.D. W. Va. Mar. 28, 2007) (citing *First Nationwide Mortg. Corp. v. FISI Madison, Inc.*, 219 F. Supp. 2d 669, 672 (D. Md. 2002)).   Section 2201 provides the following, in pertinent part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.   Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).   "In declaratory judgment actions, the dispute before the court must be 'definite and concrete, touching the legal relations of parties having adverse legal interests.'"

*Webb Law Firm, P.L.L.C.*, 2014 WL 4795159, at *5 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).   Additionally, the dispute must be "'real and substantial' and 'admi[t] to specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'"   *MedImmune, Inc.*, 549 U.S. at 127 (alteration in original) (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41 (1937)).   "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."   *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *see also McNeely v. Soyoola*, Civil Action No. 2:12–cv–8727, 2013 WL 3457731, at *2 (S.D. W. Va. July 9, 2013) ("A court may constitutionally exercise jurisdiction in a declaratory judgment proceeding only when 'the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.'" (quoting *Volvo Constr. Equip. N. Am. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004))).

"District courts have discretion in deciding whether or not to make such a declaration of rights 'in a case of actual controversy.'"   *Ball v. Baker*, Civil Action No. 5:10–cv–00955, 2012 WL 6151736, at *2 (S.D. W. Va. Dec. 11, 2012) (quoting *Aetna Cas. & Surety Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421 (4th Cir. 1998)); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (noting that the United States Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant'" (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952))).   "In applying the Declaratory Judgment Act, a district court 'has the duty to

consider whether it should abstain from exercising its discretionary jurisdiction to avoid needlessly deciding state issues' and to 'prevent duplicitous litigation.'"  *McNeely*, 2013 WL 3457731, at *3 (quoting *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1232 (9th Cir. 1998)); *see also Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942) ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.").

"[T]he Fourth Circuit Court of Appeals has explained that a declaratory judgment action 'is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"  *Nationwide Mut. Fire Ins. Co. v. Facello*, Civil Action No. 5:13–cv–21730, 2014 WL 801051, at *1 (S.D. W. Va. Feb. 28, 2014) (quoting *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004)).  "However, a court may decline to hear a declaratory judgment action for 'good reason.'"  *Baker v. Borg Warner Morse Tec, Inc.*, Civil Action No. 3:11–505, 2012 WL 1808207, at *3 (S.D. W. Va. May 17, 2012) (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994)).

"It is well established that a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism."  *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998); *see, e.g.*, *Shamblen*, 2014 WL 1276486, at *4 ("Declaratory judgments have long been used to determine the rights of insurance companies and insureds." (citation omitted)).  Indeed, "[t]he declaratory judgment action is designed to allay exactly the

13

sort of uncertainty that flows from the threat that ambiguous contractual rights may be asserted." *Kapiloff*, 155 F.3d at 494.

**B.       Determination of Insurance Policy Coverage Under West Virginia Law**

The parties agree that the substantive insurance coverage law of West Virginia applies in this case.   (*See, e.g.*, ECF No. 12 at 10; ECF No. 15 at 7–8.)   *See generally Equitable Gathering Equity, LLC v. Dynamic Energy, Inc.*, Civil Action No. 5:07–cv–00725, 2009 WL 37186, at *3 (S.D. W. Va. Jan. 7, 2009) ("Federal courts sitting in diversity are to apply the common law of the state in which they sit." (citing *Erie R.R. Co. v. Thompkins*, 304 U.S. 64 (1938))).   Under West Virginia law, the "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law."   *Tennant v. Smallwood*, 568 S.E.2d 10, 11 (W. Va. 2002) (citation omitted).   "[I]t is well-settled that insurance contracts should be interpreted according to the plain, ordinary meaning of the language used."   *Bailes v. Erie Ins. Prop. & Cas. Co.*, Civil Action No. 3:09–0146, 2010 WL 358768, at *5 (S.D. W. Va. Jan. 25, 2010) (citing *Glen Falls Ins. Co. v. Smith*, 617 S.E.2d 760, 762 (W. Va. 2005)); *see also Nationwide Mut. Ins. Co. v. Hatfield*, No. Civ.A 5:03-0083, 2005 WL 2978046, at *2 (S.D. W. Va. Nov. 7, 2005) ("In examining the language of an insurance policy, words and phrases are to be given their plain, ordinary meaning unless they are specifically defined in the policy." (citation omitted)).   "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended."   *Keffer v. Prudential Ins. Co. of Am.*, 172 S.E.2d 714, 714 (W. Va. 1970); *see also Horace Mann Ins. Co. v. Adkins*, 599 S.E.2d 720, 724 (W. Va. 2004) ("Where provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy,

14

the provisions will be applied and not construed." (quoting *Shamblin v. Nationwide Mut. Ins. Co.*, 332 S.E.2d 639, 640 (W. Va. 1985))).

"On the other hand, if a policy's provisions are ambiguous they will be liberally construed in favor of the insured." *Westfield Ins. Co. v. Carpenter Reclamation, Inc.*, Civil Action No. 5:13–cv–12818, 2014 WL 4678343, at *9 (S.D. W. Va. Sept. 18, 2014) (citing *Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E.2d 156, 160 (W. Va. 1986)); *see also Pitrolo*, 342 S.E.2d at 160 (stating that the Supreme Court of Appeals of West Virginia has "long recognized that since insurance policies are prepared solely by insurers, any ambiguities in the language of insurance policies must be construed liberally in favor of the insured" (citations omitted)). "To be ambiguous, the policy provision must be 'reasonably susceptible of two different meanings or [be] of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning.'" *Glen Falls Ins. Co.*, 617 S.E.2d at 768 (emphasis omitted) (quoting *Hamric v. Doe*, 499 S.E.2d 619, 620–21 (W. Va. 1997))). However, this liberal construction "should not be unreasonably applied to contravene the object and plain intent of the parties." *Hamric*, 499 S.E.2d at 621 (citation omitted). "[A] court is 'obliged to give an insurance contract that construction which comports with the reasonable expectations of the insured.'" *Bailes*, 2010 WL 358768, at *5 (quoting *Burr v. Nationwide Mut. Ins. Co.*, 359 S.E.2d 626, 631 (W. Va. 1987)). Additionally, "[a] contract of insurance should never be interpreted to create an absurd result, but should instead receive a reasonable interpretation." *Glen Falls Ins. Co.*, 617 S.E.2d at 768 (citation omitted). "The standard is that of what a reasonable person standing in the shoes of the insured would expect the language to mean." *Id.* (citation omitted).

"If coverage is not intended to apply, the policy should clearly indicate that insurance is not available." *Westfield Ins. Co.*, 2014 WL 4678343, at *9. "An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured." *Satterfield v. Erie Ins. Prop. & Cas.*, 618 S.E.2d 483, 483 (W. Va. 2005) (citation omitted). "[W]here the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." *Jenkins v. State Farm Mut. Auto. Ins. Co.*, 632 S.E.2d 346, 350 (W. Va. 2006) (citation omitted). Finally, in the context of a dispute regarding whether an insurance policy covers the costs of underlying litigation, "[i]f . . . the causes of action alleged in the plaintiff's complaint are entirely foreign to the risks covered by the insurance policy, then the insurance company is relieved of its duties under the policy." *Bowyer v. Hi-Lad, Inc.*, 609 S.E.2d 895, 912 (W. Va. 2004).

## C.    Summary Judgment Standard

Rule 56(a) provides that a court should grant summary judgment if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[5]    Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved

---

[5] Plaintiff styled the Motion as a "Motion for Declaratory Judgment."  (ECF No. 11.)  However, "a party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for declaratory judgment."  *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 830 (11th Cir. 2010) (citation omitted).  In the Motion, Plaintiff requests relief on the alleged basis that the pertinent facts and policy language are "clear."  (*See* ECF No. 12 at 17.) As Plaintiff asserts that the relevant facts are clear, the Court shall construe the Motion as a motion for summary judgment and apply the standard applicable to such a motion.  *See, e.g.*, *Alston v. Va. High Sch. League, Inc.*, 144 F. Supp. 2d 526, 527 (W.D. Va. 1999) (construing a motion styled as a "[m]otion for [d]eclaratory [j]udgment" as "a motion for . . . summary judgment"); *see also Scottsdale Ins. Co. v. Lynnhaven Inlet Fishing Pier Corp.*, 113 F. App'x 526, 531 (4th Cir. 2004) (applying the summary judgment standard in determining whether there was insurance coverage in a declaratory judgment action); *Nationwide Mut. Ins. Co. v. Hatfield*, No. Civ.A. 5:03-0083, 2005 WL 2978046, at *3 (S.D. W. Va. Nov. 7, 2005) (same).

in favor of either party.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Under the summary judgment standard, "[a] genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party." *Cox v. Cty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 248).   Additionally, "[f]acts are 'material' when they might affect the outcome of the case." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010); *cf.* Charles Alan Wright, *Federal Practice and Procedure* § 2725 (3d ed.) (stating that, "in ruling on motions for summary judgment federal courts have held that a fact or facts are material if" (1) "they constitute a legal defense," (2) "their existence or nonexistence might affect the result of the action," or (3) "the resolution of the issue they raise is so essential that the party against whom it is decided cannot prevail" (citations omitted)).   When construing such factual issues, the Court must view the evidence "in the light most favorable to" the party opposing summary judgment.   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citation omitted)).

The moving party may meet its burden of showing that no genuine issue of material fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production."   *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984).   Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   If a party fails to make a sufficient showing on one element

of a claim, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment . . . must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252.

### III. Discussion

The parties disagree on two overarching issues: (1) whether the provisions in the Policies applicable to claims by employees of Defendant apply to Francis' claims in the Underlying Litigation, (*see, e.g.*, ECF No. 29 at 2–7; ECF No. 30 at 7–13; ECF No. 31 at 4–10); and (2) if the employee-related provisions do not apply to Francis' claims, whether the general provisions of the CGLs and the Umbrella Policies provide coverage to Defendant for the Underlying Litigation, (*see, e.g.*, ECF No. 15 at 8–15; ECF No. 19 at 6–13). The Court addresses both topics, in turn.

### A.     Applicability of the Employee-Related Provisions

Plaintiff argues that Francis was Defendant's employee and, as such, three parts of the Policies are implicated by the Underlying Litigation: (1) the Employer's Liability Policy; (2) the CGL Employee Exclusion Provision; and (3) the provisions of the Umbrella Policies governing coverage as to Defendant's liability for "bodily injury" to Defendant's "employees" arising out of and in the course of their employment by Defendant (the "Umbrella Policy Employee Provision"). (*See, e.g.*, ECF No. 12 at 5–15.) Plaintiff also argues that there is no coverage for the Underlying Litigation under these purportedly applicable portions of the Policies. (*See, e.g.*, *id.*) Defendant

18

responds that the Employer's Liability Policy, the CGL Employee Exclusion Provision, and the Umbrella Policy Employee Provision are not implicated by the Underlying Litigation. (*See, e.g.*, ECF No. 15 at 8–15.)

"In many states, insurance companies offer businesses three types of insurance coverage: commercial general liability coverage; workers' compensation coverage; and 'stop gap' employers' liability coverage." *Erie Ins. Prop. & Cas. Co. v. Stage Show Pizza, JTS, Inc.*, 553 S.E.2d 257, 261 (W. Va. 2001). "A commercial general liability policy protects a business against numerous kinds of liability claims, but it is generally accepted that the standard policy does not provide coverage for any claim brought by an employee against his or her employer arising out of the employment." *Id.*; (*cf.* ECF No. 1-2 at 2 (providing that the CGL does not apply to "bodily injury" to "[a]n 'employee' of the insured arising out of and in the course of: (a) [e]mployment by the insured; or (b) [p]erforming duties related to the conduct of the insured's business").) "On the opposite end of the spectrum is coverage specifically for employee claims against an employer which are compensable under a state's workers' compensation laws." *Stage Show Pizza*, 553 S.E.2d at 261.

"Between these two types of protection lies a 'gap' in coverage." *Id.* at 262. The Supreme Court of Appeals of West Virginia provided the following description of coverage intended to cover this "gap":

> In this gap are claims made against a business by injured employees whose claims are not generally compensable under the workers' compensation system. An employers' liability policy therefore exists to fill the gaps between workers' compensation coverage and an employers' general liability policy. In the modern era, employers' liability insurance is designed to protect the insurer from tort liability for injuries to employees who do not come under the exclusive remedy provisions of workers' compensation. . . . Most employers' liability policies limit coverage to liability for which the insured is held liable *as an employer*.

19

*Id.* at 262 (emphasis in original) (citations omitted).

In this case, Defendant augmented its insurance with Plaintiff by procuring the Employer's Liability Policies.   (*See, e.g.*, ECF No. 1-2 at 31.)   The Employer's Liability Policies "modif[y] insurance provided under" the CGL and provide coverage, in relevant part, for "bodily injur[ies] by disease" to Defendant's "employee[s]."   (*Id.*)   As pertinent here, the Employer's Liability Policies "appl[y] to 'bodily injury by disease' only if" the "'[b]odily injury by disease' is caused by or aggravated by conditions of [Defendant's] employment" and the "'employee's' last day of last exposure to the conditions causing or aggravating such 'bodily injury by disease' . . . occur[s] during the policy period."   (ECF No. 1-6 at 17; ECF No. 1-11 at 10; ECF No. 1-15 at 26; ECF No. 1-20 at 1; *see also* ECF No. 1-2 at 31–32 (providing materially identical language in the 2006 Employer's Liability Policy).)

It is uncontested that Francis is asserting claims in the Underlying Litigation related to a "bodily injury by disease" and that the "policy period" for Defendant's Policies with Plaintiff began after Francis' last day of last exposure to the conditions causing or aggravating his disease. (*See, e.g.*, ECF No. 12 at 15; ECF No. 30 at 15–16.)   As such, to the extent Francis was Defendant's employee, the Employer's Liability Policies do not provide coverage for the Underlying Litigation.

Additionally, Defendant supplemented its insurance with Plaintiff by procuring the Umbrella Policies.  The Umbrella Policy Employee Provision similarly limits coverage "[w]ith respect to [Defendant's] liability . . . for 'bodily injury' to [Defendant's] 'employees' arising out of and in the course of their employment by [Defendant]" by stating, in pertinent part, that "this insurance only applies if . . . [a]n 'employee's' last day of last exposure to conditions causing or

aggravating such disease occurs during the policy period of this policy."   (ECF No. 1-2 at 48; ECF No. 1-6 at 33; ECF No. 1-11 at 20; ECF No. 1-17 at 18; ECF No. 1-21 at 1.)   As Francis' last day of last exposure to conditions causing or aggravating his disease occurred prior to the policy period, there is also no coverage under the Umbrella Policies to the extent Francis was Defendant's "employee" and his "bodily injury" arose out of and in the course of his employment.

Finally, the CGL Employee Exclusion Provision excludes coverage for "bodily injur[ies]" to Defendant's "employee[s]" that "aris[e] out of and in the course of" (1) their employment with Defendant; or (2) the employee "[p]erforming duties related to the conduct of the insured's business."   (ECF No. 1-2 at 2; ECF No. 1-6 at 2; ECF No. 1-10 at 35; ECF No. 1-15 at 2; ECF No. 1-19 at 2.)   As such, the CGL Employee Exclusion Provision will also exclude coverage under the CGL for the Underlying Litigation, but only if (1) Francis was Defendant's employee; and (2) the "bodily injury" arose out of and in the course of Francis' employment with Defendant or Francis' performance of duties related to the conduct of Defendant's business.

In summary, if Francis was Defendant's "employee," then there is no coverage under the Employer's Liability Policies.   Additionally, if Francis was Defendant's "employee" and his bodily injuries "ar[ose] out of and in the course of" his employment with Defendant, then there is also no coverage under either the CGLs or the Umbrella Policies.

The Court shall initially analyze whether Francis was Defendant's "employee," as that determination resolves the applicability of the Employer's Liability Policy and the first requirement of both the CGL Employee Exclusion Provision and the Umbrella Policy Employee Provision.   The Court then addresses the second requirement of these two latter

provisions—namely, whether the "bodily injury" held the requisite relationship to Francis' employment with Defendant.

    1.    <u>Whether Francis was Defendant's "Employee"</u>

The first question is whether Francis was Defendant's "employee."  To answer this question, the Court first considers the definition of the term "employee" provided in the Policies. As this definition has limited instructive value, the Court then turns to the ordinary meaning of the term "employee."

*Definition of "Employee" in the Policies*

The Court first consults the definition of the term "employee" provided in the Policies. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Hatfield*, No. Civ.A 5:03-0083, 2005 WL 2978046, at *2 (S.D. W. Va. Nov. 7, 2005) ("In examining the language of an insurance policy, words and phrases are to be given their plain, ordinary meaning unless they are specifically defined in the policy." (citation omitted)).  The Employer's Liability Policy does not include a definition for the term "employee" and instead relies on the definition of that term provided in the CGLs.  (*See* ECF No. 1-2 at 34; ECF No. 1-6 at 19; ECF No. 1-11 at 12; ECF No. 1-15 at 28; ECF No. 1-20 at 3.)  The CGLs—and the Umbrella Policies—only define the term "employee" as "includ[ing] a 'leased worker,'" but excluding "a 'temporary worker.'"  (ECF No. 1-2 at 12; ECF No. 1-6 at 12; ECF No. 1-10 at 45; ECF No. 1-15 at 12; ECF No. 1-19 at 12.)  The term "leased worker" is defined, in turn, as "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business."  (ECF No. 1-2 at 13; ECF No. 1-6 at 13; ECF No. 1-10 at 46; ECF No. 1-15 at 13; ECF No. 1-19 at 13.)  There is no evidence in the record—and the parties do not otherwise assert—that Francis was leased to

22

Defendant during his periods of employment.   As such, he was not a "leased worker," as that term is defined in the Policies.

The Policies also define the term "temporary worker" as "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions."   (ECF No. 1-2 at 15; ECF No. 1-6 at 13; ECF No. 1-10 at 48; ECF No. 1-15 at 15; ECF No. 1-19 at 15.)   The parties disagree as to whether a third party must "furnish[]" a worker to an employer in order for the worker to constitute a "temporary worker" under this definition. (*See* ECF No. 30 at 11–13; ECF No. 31 at 6–9.)   The parties have not identified—and the Court has not otherwise located—any case law from the Supreme Court of Appeals of West Virginia discussing this issue.   The clear majority of courts to interpret this exact definition "have held that the phrase 'furnished to' . . . unambiguously requires the involvement of a third party . . . that supplies the worker to the insured employer."   *Gen. Agents Ins. Co. of Am., Inc. v. Mandrill Corp.*, 243 F. App'x 961, 967 (6th Cir. 2007) (citations omitted); *see, e.g.*, *Parra v. Markel Int'l Ins. Co.*, 300 F. App'x 317, 319 (5th Cir. 2008) (applying Texas law); *Northland Cas. Co. v. Meeks*, 540 F.3d 869, 876 (8th Cir. 2008) (applying Arkansas law); *Mandrill Corp.*, 243 F. App'x at 968 (applying Tennessee law); *AMCO Ins. Co. v. Dorpinghaus*, Civil No. 05-1296 (PJS/JJG), 2007 WL 313280, at *5 (D. Minn. Jan. 12, 2007); *Nautilus Ins. Co. v. Gardner*, No. Civ.A. 04-1858, 2005 WL 664358, at *7 (E.D. Pa. Mar. 21, 2005); *Canal Ins. Co. v. Nat'l House Movers, LLC*, 777 S.E.2d 418, 422–23 (S.C. Ct. App. 2015).   *See generally Mandrill Corp.*, 243 F. App'x at 967 ("The employer exclusion and the definitions of temporary and leased workers appear on a form copyrighted by the Insurance Services Office, Inc. . . . As a result, these same definitions appear on many CGL policies across the country.").   "A minority of courts, however, have held

23

the phrase 'furnished to,' nowhere defined in the standard [policies], creates an ambiguity and thus have sent the issue to a factfinder to divine the parties' intentions." *Mandrill Corp.*, 243 F. App'x at 967 (citations omitted); *see, e.g.*, *Bituminous Cas. Corp. v. Mike Ross, Inc.*, 413 F. Supp. 2d 740, 745 (N.D. W. Va. 2006); *Ayers v. C & D Gen. Contractors*, 237 F. Supp. 2d 764, 769 (W.D. Ky. 2002).  Some courts in the minority also assert that the definition is unclear as to whether "furnished to" modifies only the first subsequent clause—"to substitute for a permanent 'employee' on leave"—or both the first and second subsequent clauses—"to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions."  *See, e.g.*, *Bituminous Cas. Corp.*, 413 F. Supp. 2d at 745.

The Court agrees with the majority position.  An interpretation of the definition of "temporary worker" that excludes the participation of a third party would render the phrase "furnished to you" without meaning and negate the parties' choice to include this language in their agreements.  *See, e.g.*, *Parra*, 300 F. App'x at 319 (stating that "attaching any . . . meaning" to the term "furnished to" that does not require the involvement of a third party "would render the provision meaningless").  Further, under the only reasonable reading of this definition, the phrase "furnished to you" modifies both of the subsequent clauses—"to substitute for a permanent 'employee' on leave" *and* "to meet seasonal or short-term workload conditions."  *See, e.g.*, *Meeks*, 540 F.3d at 876 ("The phrases 'to substitute for a permanent employee on leave' and 'to meet seasonal or short-term workload conditions' are parallel infinitive phrases that equally modify the verb 'is furnished' because they are separated by the word 'or.'" (citation omitted)); *see also Am. Family Mut. Ins. Co. v. Tickle*, 99 S.W.3d 25, 30–31 (Mo. Ct. App. 2003) ("It is grammatically impossible to read the phrase 'to meet seasonal or short-term workload conditions' without the

verb 'is furnished' because the phrase has no meaning without the antecedent verb it modifies."). Simply put, a reading that limited the application of the "furnished to you" phrase to only one of these clauses "would not make grammatical sense," *Meeks*, 540 F.3d at 876 (citation omitted), and would result in a strained reading of this definition. The Court therefore predicts that the West Virginia courts would follow the natural reading of this definition—including giving effect to each phrase in the definition—and determine that, in order to constitute a "temporary worker," a third party must participate by furnishing the worker to the insured employer.

In the present matter, Defendant asserts that Francis was, in fact, furnished to Defendant by a third party—namely, his union. (*See* ECF No. 30 at 13; *see also* ECF No. 1-34 ¶ 1 (providing Francis' allegation in his complaint that he "worked as a welder out of Marietta Pipefitters Local 168").) Plaintiff responds that "there is no evidence in the record to support [Defendant's] assertion that . . . Francis was furnished to [Defendant] by his union" and, instead, "the evidence supports the fact that . . . Francis was a full-time employee of H.E. Neumann . . . and that he was employed directly by [Defendant]." (ECF No. 31 at 8–9.)

The Court finds that there are genuine issues of material fact as to whether Francis was furnished to Defendant by a third party. The only evidence in the record regarding Francis' employment with Defendant is a work history Francis supplied in the Underlying Litigation where he lists Defendant as his "[e]mployer" during three relatively short time periods: (1) February 28, 1978 to April 4, 1978; (2) February 21, 1979 to March 7, 1979; and (3) April 15, 1981 to June 25, 1981. (ECF No. 1-35 at 1–3.) Based on this meager evidence, it is unclear whether Francis was hired directly by Defendant, or if a third party furnished Francis to Defendant during these brief

periods of employment.[6]   As there is no evidence in the record regarding the nature of Francis'

employment with Defendant, the Court finds that a determination as to whether Francis was a

"temporary worker"—and, correspondingly, whether he was an "employee" for purposes of the

Policies—is inappropriate.   This issue is properly left to the decider of fact.

At this juncture, the Court notes that there is an additional issue regarding whether Francis

was a "temporary worker."   In particular, to constitute a "temporary worker," the worker must be

"furnished" by a third party to the insured (1) "to substitute for a permanent 'employee' on leave;"

(2) "to meet seasonal . . . workload conditions;" or (3) "to meet . . . short-term workload

conditions."   (ECF No. 1-2 at 15; ECF No. 1-6 at 13; ECF No. 1-10 at 48; ECF No. 1-15 at 15;

ECF No. 1-19 at 15); *see also Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 78–80 (1st Cir. 2009)

(discussing these additional requirements in the "temporary worker" definition).   The CGLs and

the Umbrella Policies do not define these terms and the parties have not addressed whether any of

these additional requirements are met.   Furthermore, while Francis lists Defendant as his

"[e]mployer" for three relatively brief periods of time, (*see* ECF No. 1-35 at 1–3), there is no

evidence in the record indicating whether Francis was "furnished to" substitute for a permanent

employee on leave, meet seasonal workload conditions, or meet short-term workload conditions,

*cf. Scottsdale Ins. Co.*, 561 F.3d at 79 ("The phrase 'furnished . . . to meet' suggests that the

reasonable expectations of the parties concerning workload conditions, as measured at the time the

employee is 'furnished,' governs whether the employee fits within either the 'seasonal' or 'short-

---

[6] The Court notes that "union membership, alone, is insufficient to meet the 'furnished to' requirement because membership simply makes a person eligible for employment on a union job." *Gavan v. Bituminous Cas. Corp.*, 242 S.W.2d 718, 720 (Mo. 2008). However, in the instant case, the record does not indicate whether Francis was merely a member of the Marietta Pipefitters Local 168, or if this union affirmatively supplied Francis to Defendant for employment. As such, the Court cannot make a determination as to whether the union operated as the requisite third-party provider to satisfy the "furnished to" requirement.

term' category." (citation omitted)).   The Court is therefore ill-equipped to rule on whether any of these additional requirements are satisfied in this case.   This issue is also properly left to the decider of fact.

*Plain Meaning of "Employee"*

The next question as to the applicability of the Employer's Liability Policies—and the potential applicability of the CGL Employee Exclusion Provision and the Umbrella Policy Employee Provision—is whether Francis was otherwise Defendant's "employee."   In other words, if Francis was not a "leased worker" or a "temporary worker," was he nonetheless an "employee" for purposes of the Policies?

As the limited definition of "employee" in the Policies does not provide an answer as to whether an individual is an employee of the insured—beyond the inclusion of "leased workers" and exclusion of "temporary workers"—the Court turns to the plain meaning of the term "employee" for guidance.   *See, e.g.*, *Blake v. State Farm Mut. Auto. Ins. Co.*, 685 S.E.2d 895, 901 (W. Va. 2009) ("[O]verwhelming case law supports the established principle that language in an insurance policy should be given its plain, ordinary meaning." (citation omitted)).   Black's Law Dictionary defines the term "employee" as "[s]omeone who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance."   *Employee*, Black's Law Dictionary (10th ed. 2014).   Webster's Third New International Dictionary similarly defines the term "employee" in the context of "labor relations" as "any worker who is under wages or salary to an employer and who is not excluded by agreement from consideration as such a worker."   *Employee*, Webster's Third New International Dictionary 743 (Philip Babcock Gove ed., Merriam-Webster Inc. 2002).

27

In the present matter, the record is also insufficient to determine whether Francis was Defendant's "employee" under the plain meaning of this term.   As previously noted, the only evidence in the record regarding Francis' employment with Defendant is the work history Francis supplied in the Underlying Litigation where he lists Defendant as his "[e]mployer" during three short periods of time between 1978 and 1981.   (*See* ECF No. 1-35 at 1–3.)   However, the record does not indicate whether Francis was Defendant's "employee" under the plain meaning of this term, including whether Defendant controlled the details of Francis' work or paid him wages.   The issue of whether Francis was Defendant's "employee" during these short intervals—if he was not otherwise a "temporary worker"—is therefore also properly reserved for the finder of fact.

2.   Relationship of "Bodily Injury" to Employment

While the issue of whether Francis was Defendant's "employee" will resolve the coverage issue as to the Employer's Liability Policy, the CGL Employee Exclusion Provision and the Umbrella Policy Employee Provision include an additional requirement.   In particular, coverage will not be excluded under the CGLs and the Umbrella Policies pursuant to these provisions unless the "bodily injury" arose out of and in the course of Francis' employment with Defendant.   (ECF No. 1-2 at 2 & 48; ECF No. 1-6 at 2 & 33; ECF No. 1-10 at 35; ECF No. 1-11 at 20; ECF No. 1-15 at 2; ECF No. 1-17 at 18; ECF No. 1-19 at 2; ECF No. 1-21 at 1; *see also* ECF No. 1-2 at 2 (providing the CGL Employee Exclusion Provision, which states that insurance under the CGL "does not apply to . . . '[b]odily injury' to . . . [a]n 'employee' of [Defendant] arising out of and in the course of . . . [e]mployment by [Defendant]; or . . . [p]erforming duties related to the conduct of [Defendant's] business").)   As to the "arise out of and in the course of" requirement, the Supreme Court of Appeals of West Virginia has noted that "[t]he task of construction is made

28

easier by breaking the phrase in half, with the 'arising out of' . . . portion construed to refer to causal origin, and the 'course of employment' portion to the time, place, and circumstances of the accident in relation to the employment." *Morton v. W. Va. Office of Ins. Comm'r*, 749 S.E.2d 612, 616 (W. Va. 2013) (citation omitted).

The "arise out of and in the course of" requirement presents two problems as to the application of the CGL Employee Exclusion Provision and the Umbrella Policy Employee Provision in this case.   First, there is insufficient evidence in the record to determine whether this requirement is satisfied as to those periods when Francis was purportedly employed by Defendant. Specifically, while Francis listed Defendant as his "[e]mployer" for three short periods of time between 1978 and 1981, (*see* ECF No. 1-35 at 1–3), there is no additional evidence in the record either (1) indicating whether there was a causal connection between Francis' disease and these employment periods, or (2) linking the time, place, and circumstances of Francis' purported exposure to harmful materials and his employment with Defendant.   Based on this deficient record, there remain genuine issues of material fact as to whether Francis' alleged exposure arose out of and in the course of his employment with Defendant.[7]   These issues are appropriately left to the decider of fact.

Second, Francis' claims against Defendant in the Underlying Litigation both encompass and extend beyond his purported periods of employment with Defendant.   In particular, Francis'

---

[7] As noted above, the CGL Employee Exclusion Provision excludes coverage for "'[b]odily injury' to . . . [a]n 'employee' of [Defendant] arising out of and in the course of" either (1) "[e]mployment by [Defendant];" or (2) "[p]erforming duties related to the conduct of [Defendant's] business."   (*E.g.*, ECF No. 1-2 at 2 (emphasis added).)   As to this latter provision—which is not present in the other employee-related provisions of the Policies at issue in this case—there is similarly no evidence in the record regarding whether Francis' purported exposure to harmful materials arose out of and in the course of his performance of duties related to the conduct of Defendant's business. Thus, the Court is ill-equipped to decide whether this latter provision in the CGL Employee Exclusion Provision is satisfied by Francis' claims in the Underlying Litigation.   This issue is also properly left to the decider of fact.

claims do not relate solely to these periods of employment—or, indeed, to Defendant's position as an employer.  (*See* ECF No. 1-34. *See generally* ECF No. 1-2 at 2 (providing that the CGL Employee Exclusion Provision applies "[w]hether the insured may be liable as an employer or in any other capacity").)   Instead, Francis' complaint includes five claims against Defendant (and forty-four other companies), in which Francis alleges that he was exposed to "dangerous ingredients and products" that Defendant allegedly "min[ed], mill[ed], manufactur[ed], distribut[ed], suppl[ied], s[old] and/or us[ed] and/or recommend[ed] the use of."   (ECF No. 1-34 ¶¶ 7–19, 23–30.)   Additionally, Francis alleges that Defendant was present at his jobsites during periods when he was not employed by Defendant, including between (1) April 17, 1978 and May 3, 1978; and (2) June 12, 1978 and February 20, 1979.   (ECF No. 1-35 at 1–2.)   Simply put, while portions Francis' claims in the Underlying Litigation *may* have a causal and temporal tie to his purported periods of employment with Defendant, his claims also extend beyond this employment relationship.   Francis' claims against Defendant in the Underlying Litigation that do not relate to his purported employment with Defendant do not "arise out of" and "in the course of" his employment.   Consequently, the CGL Employee Exclusion Provision and the Umbrella Policy Employee Provision do not preclude coverage as to the portion of Francis' claims that do not meet these requirements.

The next issue is whether there is coverage under the CGLs and the Umbrella Policies as to the portion of Francis' claims that do not arise out of and in the course of his employment with Defendant.   Of course, "[i]t is well established" in West Virginia "that an insurer is only obligated to indemnify its insured for claims that *actually* fall within the terms of the policy."   *State ex rel. Nationwide Mut. Ins. Co. v. Wilson*, 778 S.E.2d 677, 682 (W. Va. 2015) (citation omitted).   Thus,

"[w]hen only some, but not all, of the claims in a lawsuit fall within the terms of a . . . policy, the insurer is not obligated to indemnify its insured for those claims that do not fall within the . . . policy's terms." *Id.* at 683. "By contrast, an insurer's duty to provide its insured a defense is broader than the duty to indemnify." *Id.* at 682. "[I]f part of the claims against an insured fall within the coverage of a liability insurance policy and part do not, the insurer must defend all of the claims." *Id.* (citation omitted).

Thus, in the present matter, the Court must determine whether the portion of Francis' claims that do not relate to his employment with Defendant fall within the terms of the CGLs and the Umbrella Policies. If there is coverage for those claims, Plaintiff must indemnify Defendant for those claims that fall within the terms of the Policies and provide a defense for Defendant as to all of Francis' claims in the Underlying Litigation. The Court therefore next turns to the analysis of whether there is coverage for Francis' non-employment related claims in the Underlying Litigation.

**B.      Coverage under the Non-Employee Provisions of the CGLs and the Umbrella Policies**

Plaintiff provides two arguments as to why there is no coverage under the CGLs or the Umbrella Policies, regardless of whether Francis was Defendant's "employee": (1) Francis' claims in the Underlying Litigation fall outside the scope of the plain meaning of the CGLs and the Umbrella Policies because Francis' alleged harm occurred outside of the policy period, (*see, e.g.*, ECF No. 12 at 5–11); and (2) if the relevant language of the CGLs and the Umbrella Policies is ambiguous, the Court should rule that harm occurs—in the context of latent diseases—at the time of exposure, which, in this case, occurred before the policy periods, (*see, e.g.*, ECF No. 19 at 6–12). Defendant responds that the relevant policy language is ambiguous and asserts that the Court

should find that Francis' alleged harm occurred during the relevant policy periods.   (*See, e.g.*, ECF No. 15 at 8–14.)   For the reasons that follow, the Court agrees with Defendant's position.

1.     The Relevant Policy Provisions Are Ambiguous in the Context of Latent Diseases

The Court must first consider whether the plain language of the CGLs and the Umbrella Policies dispose of the issue of coverage in this case.   *See, e.g.*, *Glen Falls Ins. Co. v. Smith*, 617 S.E.2d 760, 762 (W. Va. 2005).   If the relevant policy language is clear and unambiguous, the Court shall give this language its full effect.   *See, e.g.*, *Keffer v. Prudential Ins. Co. of Am.*, 172 S.E.2d 714, 714 (W. Va. 1970).

Both the CGLs and the Umbrella Policies provide—in relevant part and outside of the context of claims by "employees"—that these policies only apply to "bodily injur[ies]" if: (1) "[t]he 'bodily injury' . . . is caused by an 'occurrence' that takes place in the 'coverage territory;'" and (2) "[t]he 'bodily injury' . . . occurs during the policy period."   (ECF No. 1-2 at 1 & 48; ECF No. 1-6 at 1 & 33; ECF No. 1-10 at 34; ECF No. 1-11 at 20; ECF No. 1-15 at 1; ECF No. 1-17 at 18; ECF No. 1-19 at 1; ECF No. 1-21 at 1.)   These policies define the term "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."   (ECF No. 1-2 at 12 & 64; ECF No. 1-6 at 12 & 52; ECF No. 1-10 at 45; ECF No. 1-11 at 39; ECF No. 1-15 at 12; ECF No. 1-17 at 37; ECF No. 1-19 at 12; ECF No. 1-21 at 20.)   These policies then define the term "occurrence"—outside the context of employee-related claims—as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."   (ECF No. 1-2 at 14 & 66; ECF No. 1-6 at 14 & 54; ECF No. 1-10 at 47; ECF No. 1-11 at 41; ECF No. 1-15 at 14; ECF No. 1-17 at 39; ECF No. 1-19 at 14; ECF No. 1-21 at 22.)

It is uncontested that Francis' alleged illness constitutes a "bodily injury" under the Policies. Additionally, Defendant asserts—and Plaintiff does not contest—that the first requirement of coverage under the CGLs and the Umbrella Policies—*i.e.*, "[t]he 'bodily injury' . . . is caused by an 'occurrence' that takes place in the 'coverage territory'"—is satisfied in this case. (*See, e.g.*, ECF Nos. 12 & 15.) Rather, the sole remaining disagreement between the parties relates to the second requirement of coverage under the CGLs and the Umbrella Policies—whether Francis' "bodily injury" occurred during the policy period. (*See, e.g.*, ECF No. 12 at 5–11; ECF No. 15 at 8–14; ECF No. 19 at 1–12.) Courts refer to this disagreement as pertaining to "the so-called 'trigger of coverage,' *i.e.*, what it is that must happen during the policy period in order to trigger the insurance company's duty to defend and indemnify the insured." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Porter Hayden Co.*, 331 B.R. 652, 658 (D. Md. Sept. 9, 2005).

The plain language of the CGLs and the Umbrella Policies does not resolve the trigger-of-coverage issue in the context of latent diseases. In particular, in order for there to be coverage, the "bodily injury" must be caused by an "occurrence." (*See, e.g.*, ECF No. 1-2 at 1 & 48.) However, the policies do not include any language limiting coverage based on the date of the "occurrence." (*See, e.g., id.*) Instead, the temporal requirement is provided by the language that "[t]he 'bodily injury' . . . [must] occur[] during the policy period." (ECF No. 1-2 at 1; ECF No. 1-6 at 1; ECF No. 1-10 at 34; ECF No. 1-15 at 1; ECF No. 1-19 at 1; *see also* ECF No. 1-2 at 48 (providing the requirement in the Umbrella Policies that coverage "only applies if" the "'bodily injury' . . . occurs during the policy period *of this policy*" (emphasis added)); ECF No. 1-6 at 33 (same); ECF No. 1-11 at 20 (same); ECF No. 1-17 at 18 (same); ECF No. 1-21 at 1 (same).) This

vague temporal requirement is what injects ambiguity into these coverage provisions in the context of latent diseases. *See, e.g.*, *Keene Corp. v. Ins. Co. of N. Am.*, 667 F.2d 1034, 1040–41 (D.C. Cir. 1981) (addressing an insurance policy that provided "that an 'injury,' and not the 'occurrence' that causes the injury, must fall within a policy period for it to be covered by the policy" and finding that the "particular terms of the policies are ambiguous as applied to [latent] diseases"). In particular, a latent-disease "bodily injury" could "occur" at the time of initial exposure, during the latency period, or when the disease is ultimately discovered. *See, e.g.*, *id.* at 1043 ("In the context of [latent] disease[s], the terms 'bodily injury,' 'sickness' and 'disease,' standing alone, simply lack the precision necessary to identify a point in the development of a disease at which coverage is triggered."); *see also Ins. Co. of N. Am. v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212, 1222 (6th Cir. 1980) (noting that "[t]here is usually little dispute as to when an injury occurs when dealing with a common disease or accident," but "there is considerable dispute as to when an injury from [a latent disease] should be deemed to occur"). As this definition is reasonably susceptible to more than one meaning in this context, the Court finds that it is ambiguous when determining the trigger of coverage as to latent "bodily injur[ies]." *See, e.g.*, *Am. States Ins. Co. v. Surbaugh*, 745 S.E.2d 179, 186 (W. Va. 2013) ("[W]henever the language of an insurance policy provision is reasonably susceptible to two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." (citation omitted)). The Court therefore cannot resolve the trigger-of-coverage issue in this case from the plain language of the CGLs and the Umbrella Policies.

      2.     <u>Timing of Coverage</u>

The parties disagree as to which approach the Court should take in determining the trigger of coverage in this case.   (*See* ECF No. 15 at 8–14; ECF No. 19 at 6–12.)   The parties have not identified—and the Court has not found—a decision by the Supreme Court of Appeals of West Virginia[8] addressing the trigger-of-coverage issue in the context of latent diseases or other similar latent conditions.[9]   Nonetheless, the Court must find a reasonable interpretation as to the trigger-of-coverage issue in this case that comports with the intentions of the parties.   *See, e.g.*, *Riffe v. Home Finders Assocs., Inc.*, 517 S.E.2d 313, 318 (W. Va. 1999) (noting that an insurance "policy

---

[8] In *Wheeling Pittsburgh Corp. v. American Insurance Co.*, Judge Mazzone of the First Judicial Circuit Court of West Virginia addressed the trigger-of-coverage issue in the context of latent environmental damage.   *See* No. Civ.A. 93-C-340, 2003 WL 23652106, at *13–17 (W. Va. Cir. Ct. Oct. 18, 2003).   Judge Mazzone provided the following conclusion:

> [T]he continuous or multiple trigger theory is applicable to the present action insofar as all named defendants' policies in effect during the relevant time periods may be potentially invoked by the [p]laintiff to provide coverage for the actual property damage proven to be continuous or progressively deteriorating throughout the several policy periods.

*Id.* at *16.   While Judge Mazzone's analysis in *Wheeling Pittsburgh Corporation* is both detailed and exhaustive, the Court also notes that this opinion is unpublished and not binding in the instant case.   *See, e.g.*, *West Virginia v. Allen*, 539 S.E.2d 87, 103 (W. Va. 1999) (providing the Supreme Court of Appeals of West Virginia's statement that it "generally will not be persuaded by unreported opinions" (citations omitted)).

[9] In its briefing, Plaintiff repeatedly cites the Supreme Court of Appeals of West Virginia's decision in *State Bancorp, Inc. v. United States Fidelity and Guaranty Insurance Co.*, 483 S.E.2d 228 (W. Va. 1997) for the proposition that West Virginia courts have "held that it is the date the covered offense occurs, not date of injury, that triggers personal injury coverage under liability insurance policies."   (*E.g.*, ECF No. 31 at 3 (citing *State Bancorp, Inc.*, 483 S.E.2d 228).)   Plaintiff's reliance on the *State Bancorp, Inc.* decision is misplaced.   In that case, the Supreme Court of Appeals of West Virginia addressed a commercial general liability "policy [that] expressly state[d] that '[t]his insurance applies to personal injury *only* if caused by an *offense: . . . [c]ommitted . . . during the policy period*[.]'"   *State Bancorp, Inc.*, 483 S.E.2d at 237 (alterations in original).   Based on this policy language, the court stated that "it is the date when the offense occurs that triggers the coverage rather than the date of the injury.   *Id.* (citation omitted).   A plain reading of the *State Bancorp, Inc.* decision indicates that the court's statement was borne directly out of the policy language at issue in that case and *not* as a separate determination regarding trigger-of-coverage issues generally.   *See id.*

The language in the CGLs and Umbrella Policies regarding the triggering of coverage offers no such clarity in this case.   Indeed, as discussed at length herein, the pertinent temporal language in the policy—that "[t]he 'bodily injury' . . . occurs during the policy period"—may be interpreted in the context of latent diseases as triggering at the initial exposure, during the latency period, or at the time of the manifestation of the disease.   Of course, the parties were free to use different policy language to provide added clarity in the context of latent diseases.   However, as the parties declined to include such language in the Policies, the Court must determine which trigger-of-coverage approach the West Virginia courts would embrace in this context.

should never be interpreted so as to create an absurd result, but instead should receive a reasonable interpretation, consistent with the intent of the parties" (citation omitted)).

As both parties note, courts around the country have addressed similar language in insurance agreements and provided starkly different rulings as to whether—in the context of latent conditions—the trigger of coverage occurred at the time of the creation of the harm, during the latency period, or at the discovery of the harm. *See, e.g.*, *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 110 F. Supp. 2d 441, 447 (E.D. Va. 2000) (stating, in the context of a case involving latent-pollution harm, that "courts have adopted-and are heavily split as to the appropriate choice of-one of four general 'trigger theories' based on different constructions of a covered 'occurrence' in CGL policies" (citation omitted)); *Clemco Indus. v. Commercial Union Ins. Co.*, 665 F. Supp. 816, 823 (N.D. Cal. 1987) ("[T]here are significant differences among the [federal] circuits on the proper theory to apply for coverage of diseases with long latency periods."). "In determining when [a latent-condition] bodily injury has occurred, courts have reached differing conclusions which generally fall into four categories or 'theories': (1) the exposure theory; (2) the manifestation theory or discovery rule; (3) the continuous exposure, or triple trigger, theory; and (4) the injury-in-fact theory." *Imperial Cas. & Indem. Co. v. Radiator Specialty Co.*, 862 F. Supp. 1437, 1441 (E.D.N.C. 1994) (citations omitted). In *Imperial Casualty and Indemnity Co.*, a district court in this Circuit provided the following description of these four theories:

> Under the exposure theory, the bodily injury is held to occur in the policy period when the claimant is shown to have been exposed to a harmful substance such as asbestos. Under the manifestation or discovery theory, the bodily injury occurs as soon as the injury manifests itself, that is, when the injury becomes reasonably capable of being medically diagnosed. Under the continuous exposure theory, bodily injury triggers coverage when the exposure occurs, during the period of progression of the injury or when the injury manifests itself. And under the injury-

in-fact theory, bodily injury occurs when there is medical evidence establishing when the injury occurred, regardless of when it becomes diagnosable.

*Id.* (citations omitted).

The Court finds that the manifestation theory is the appropriate approach in the present context of latent diseases for numerous reasons. First, two courts in this District recently addressed identical trigger-of-coverage policy language—*i.e.*, coverage only triggers if the relevant harm "occurs during the policy period"—and applied the manifestation theory. *See Westfield Ins. Co. v. Mitchell*, 22 F. Supp. 3d 619, 622–23 (S.D. W. Va. 2014) (Goodwin, J.); *Simpson-Littman Constr., Inc. v. Erie Ins. Prop. & Cas. Ins. Co.*, Civil Action No. 3:09–0240, 2010 WL 3702601, at *13–14 (S.D. W. Va. Sept. 13, 2010) (Chambers, J.). While these cases involved a different type of harm—property damage, rather than latent diseases, *see Mitchell*, 22 F. Supp. 3d at 623; *Simpson-Littman*, 2010 WL 3702601, at *14—the similarities between the alleged harm in those cases and the instant matter are striking. In particular, the facts in *Mitchell*, *Simpson-Littman*, and the Underlying Litigation all involve an initial harm, latency period, then discovery of the harm. *See Mitchell*, 22 F. Supp. 3d at 621; *Simpson-Littman*, 2010 WL 3702601, at *1–2; (ECF No. 1-34.) *But see Imperial Cas. & Indem. Co.*, 862 F. Supp. at 1442 (declining to extend cases that address the trigger-of-coverage issue in the context of property damage to a latent-disease case). The Court finds that these decisions are persuasive in the instant case based on the similarities between the alleged harms.[10]

Second, the manifestation approach provides a measure of certainty in determining the trigger of coverage in the context of a latent conditions. In *Mraz v. Canadian Universal Insurance*

---

[10] The Court also notes that adopting the manifestation rule in the context of latent diseases will provide consistency and therefore predictability to litigants as to how courts in this District will interpret West Virginia law with respect to trigger-of-coverage issues in the context of latent harms.

*Co.*, the Fourth Circuit provided the following pertinent discussion of the merits of the manifestation theory in the context of latent harms:

> The general rule is that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time when the complaining party was actually damaged. Often, these cases involve a wrongful act that produces no harm for a period of time and then suddenly manifests itself in a burst of damage.
>
> . . .
>
> There are situations, however, in which the existence or scope of damage remains concealed or uncertain for a period of time even though damage is occurring. . . . Determining exactly when damage begins can be difficult, if not impossible. In such cases we believe that the better rule is that the [trigger of coverage] is deemed to take place when the injuries first manifest themselves.

804 F.2d 1325, 1328 (4th Cir. 1986) (citations omitted). The Court finds that these concerns are equally applicable in the instant latent-disease context. The determination of when exactly Francis was exposed to the allegedly harmful materials is likely near impossible. *Cf. Ins. Co. of North Am. v. Forty-Eight Insulations, Inc.*, 451 F. Supp. 1230, 1244 (E.D. Mich. 1978) (noting that "[t]he cumulative and indivisible nature of the injuries" in asbestos-related cases "makes it impossible to determine when any given portion of such injuries occurred"). Indeed, as the parties note, Francis alleges exposure to harmful substances over a period of several decades. (*See, e.g.*, ECF No. 1-34 ¶ 1 (providing Francis' allegation that he "was exposed to various chemicals and heavy metals throughout the course of his employment at various industrial facilities throughout the state of West Virginia and elsewhere"); *see also* ECF No. 1-35 (providing Francis' work history).) In such circumstances, a rule limiting coverage to the time of exposure is untenable, insofar as this determination may simply be impossible. *See, e.g.*, *Mraz*, 804 F.2d at 1328. Providing for coverage under the manifestation theory, on the other hand, provides parties with

certainty as to the trigger of coverage—the date on which the individual manifests the latent condition.

Third, application of the manifestation theory comports with the guidance of the West Virginia Supreme Court of Appeals as to the proper interpretation of ambiguous insurance-coverage provisions. That court has "long recognized that since insurance policies are prepared solely by insurers, any ambiguities in the language of the policies must be construed liberally in favor of the insured." *Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E.2d 156, 160 (W. Va. 1986) (citations omitted); *see, e.g.*, *Tackett v. Am. Motorists Ins. Co.*, 584 S.E.2d 158, 163 (W. Va. 2003) ("[I]t is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." (citation omitted)). In this case, construing the trigger-of-coverage language in the CGLs and the Umbrella Policies—*i.e.*, "[t]he 'bodily injury' . . . occurs during the policy period"—under the manifestation theory favors the insured, as it requires Plaintiff to provide coverage to Defendant under the Policies. Of course, the parties could have easily avoided this issue by including language in the Policies regarding the trigger of coverage in the context of latent diseases. In the absence of such clear language, however, West Virginia case law is clear that the Court must construe the ambiguous timing-of-coverage language in favor of Defendant. *See, e.g.*, *Horace Mann Ins. Co. v. Leeber*, 376 S.E.2d 581, 584 (W. Va. 1988) ("[A]ny ambiguity in the language of an insurance policy is to be construed liberally in favor of the insured, as the policy was prepared exclusively by the insurer. This principle applies to policy language on the insurer's duty to defend the insured, as well as to policy language on the insurer's duty to pay.").

Finally, the Court finds that the manifestation theory comports with the legitimate intentions of the parties in agreeing to the Policies, as well as the reasonable expectations of the insured. *Cf. Bailes v. Erie Ins. Prop. & Cas. Co.*, Civil Action No. 3:09–0146, 2010 WL 358768, at *5 (S.D. W. Va. Jan. 25, 2010) ("[A] court is 'obliged to give an insurance contract that construction which comports with the reasonable expectations of the insured.'" (quoting *Burr v. Nationwide Mut. Ins. Co.*, 359 S.E.2d 626, 631 (W. Va. 1987))); *Hamric v. Doe*, 499 S.E.2d 619, 621 (W. Va. 1997) (stating that a court's liberal construction of ambiguous insurance-policy provisions "should not be unreasonably applied to contravene the object and plain intent of the parties" (citation omitted)).   As courts have noted, the "purpose of insurance is to protect insureds against unknown risks." *E.g.*, *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 63 (3d Cir. 1982); *S.R.P. Mgmt. Corp. v. Seneca Ins. Co.*, Civil Action No. 06-935, 2008 WL 2039466, at *8 (E.D. Pa. May 13, 2008) (quoting *Rohm & Haas Co. v. Cont'l Cas. Co.*, 781 A.2d 1172, 1176 (Pa. 2001)); *see, e.g.*, *McDevitt v. Reliance Standard Life Ins. Co.*, 663 F. Supp. 2d 419, 423 (D. Md. 2009) ("[T]he ultimate purpose of insurance is to provide coverage to those who have contracted for it . . . ."); *Allstate Ins. Co. v. Jarrett*, Civ. A. No. 90–0051–R, 1994 WL 521094, at *3 (W.D. Va. Apr. 22, 1994) ("[T]he purpose of insurance is protection." (citing *United Servs. Auto. Ass'n v. Webb*, 369 S.E.2d 196, 198 (Va. 1988))).   In this case, Defendant contracted with Plaintiff to provide coverage for certain potential risks.   There is no evidence in the record that Defendant was aware of the Underlying Litigation when the parties entered into their agreements regarding the Policies.   Further, Plaintiff has not pointed to any evidence in the record indicating that the parties intended to exclude third-party litigation relating to latent diseases from the scope of coverage.   Absent such evidence, application of the manifestation theory in this case furthers

40

the legitimate intentions of the parties when they entered into the Policies by protecting Defendant against unknown risks. Additionally, the use of the manifestation theory comports with Defendant's reasonable expectations to receive protection against unknown and unknowable risks, such as the latent disease at issue in the Underlying Litigation.[11]   *See, e.g.*, *Keene Corp. v. Ins. Co. of N. Am.*, 667 F.2d 1034, 1045 (D.C. Cir. 1981) ("A latent injury, unknown and unknowable to [the insured] at the time it purchased insurance, must, at least, be covered by an insurer on the risk at the time it manifests itself. Any other result would violate very reasonable expectations of [the insured].").

For the above reasons, the Court finds that—in applying West Virginia substantive law—the manifestation theory is the appropriate approach for the timing-of-coverage issue relating to the latent-disease allegations in the Underlying Litigation. As such, Francis's "bodily injury" triggered coverage at the time his illness manifested. It is uncontested in this case that Francis' illness manifested during the coverage period of the Policies. (*See, e.g.*, ECF No. 15 at 12 n.3.) As such, Defendant has coverage under the Policies for Francis' claims in the Underlying

---

[11]  The Court notes that some courts rejected application of the manifestation theory in the context of latent conditions on the grounds that this theory may actually harm the insured. For example, in *Hancock Laboratories, Inc. v. Admiral Insurance Co.*, the Ninth Circuit stated the following:

> Under the manifestation theory, coverage can become illusory when the manufacturer of a product is faced with an increasing rate of injured persons. At a certain point, the manufacturer will be unable to secure any insurance coverage. Thus, when some of the injured persons manifest their injury, there will be no insurance.

777 F.2d 520, 525 (9th Cir. 1985). While the Court understands these concerns, it nonetheless is not persuaded by this line of reasoning. First, there is an element of speculation—that a particular party will be unable to obtain insurance, and at what point in time that might happen is difficult to foresee, especially considering that other conditions could occur in the interim, such as increased premiums. On the other hand, the manifestation theory provides certainty in ascertaining the timing of coverage. *See, e.g.*, *Mraz v. Canadian Universal Insurance Company*, 804 F.2d 1325, 1328 (4th Cir. 1986). Further, in the present case, the manifestation theory comports with the legitimate intentions of the parties in entering into the Policies. The Court therefore finds that the manifestation theory is the better rule and, importantly, that the Supreme Court of Appeals of West Virginia would adopt the manifestation theory in this case.

41

Litigation that are not otherwise excluded under the Employer's Liability Policies, the CGL Employee Exclusion Provision, and the Umbrella Policy Employee Provision.

In summary, there are genuine issues of material fact as to whether the Employer's Liability Policy, the CGL Employee Exclusion Provision, and the Umbrella Policy Employee Provision are applicable for any portion of Francis' claims in the Underlying Litigation. These issues are appropriately left to the decider of fact. Additionally, Plaintiff has a duty to indemnify Defendant pursuant to the language of the CGLs and the Umbrella Policies for the costs of the Underlying Litigation that are not otherwise excluded under these employee-related provisions. *See, e.g.*, *State ex rel. Nationwide Mut. Ins. Co. v. Wilson*, 778 S.E.2d 677, 682 (W. Va. 2015) ("It is well established that an insurer is only obligated to indemnify its insured for claims that *actually* fall within the terms of the policy." (citation omitted)). Finally, as Plaintiff has a duty to indemnify Defendant as to a portion of Francis' claims, Plaintiff also has a duty to defend Defendant as to all of the claims in the Underlying Litigation. *See, e.g.*, *id.* ("[I]f part of the claims against an insured fall within the coverage of a liability insurance policy and part do not, the insurer must defend all of the claims." (citation omitted)). As such, Plaintiff's Motion—in which it requests declaratory relief providing that it does not have any duty to indemnify or defend Defendant in the Underlying Litigation—is properly denied, in its entirety.[12]

---

[12] In its briefing, Plaintiff also requests declarations: (1) "[t]hat the language of [Plaintiff's] policies is clear and unambiguous;" and (2) "[t]hat, pursuant to the clear and unambiguous language of the subject policies, the policies do not provide coverage for [Defendant] and their alleged actions or inactions which occurred from 1978 to 1981." (ECF No. 12 at 17–18.) The Court notes that these requests for relief extend far beyond the specific issues raised by the Underlying Litigation. In particular, Plaintiff requests that the Court make determinations regarding Plaintiff's insurance policies and any potential coverage for Defendant that are unrelated to (1) the Policies at issue in this case, or (2) the facts presented in this matter. The Court declines Plaintiff's invitation to make any determinations that are not moored in the facts or Policies at issue in this case.

The Court also notes that Defendant requests declaratory statements from the Court in its opposition briefing regarding the Motion. (*See* ECF No. 15 at 16.) However, Defendant did not file a motion requesting this relief. As such, these determinations are not properly before the Court and the Court shall not address them in the instant opinion.

### *IV.  Conclusion*

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion. (ECF No. 11.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any

unrepresented party.

ENTER:        September 23, 2016

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

*Cf. Deel v. W. Va. EMS Tech. Support Network, Inc.*, Civil Action No. 2:06–1064, 2009 WL 2213473, at *4 (S.D. W. Va. July 23, 2009) (denying the plaintiff's motion for declaratory judgment, but not otherwise declaring the rights of the parties when not raised by the motion before the court).

43